Pkioe, C. J.
Sometime in the year 1879, a number of well meaning men and women of South Kenton, met and organized a ■Union Sunday School, which was to be non-sectarian in ■character and teachings, in which would be gathered children of that part of the village from all classes and families, 'whether connected with any church or not. Members and friends of the different churches took part in this organization and became teachers and officers of the Sunday School, and devoted a part of each sabbath in giving the youth of that vicinity moral and religious training, and exerted their influence on that day, and at opportune occasions during the week, to encourage and build up this non-denominational institution. There, men and women of different creeds and doctrinal faith, and some of no creed, assembled on a common platform for the purpose of promoting the broad •principles of Christianity and the moral and spiritual welfare *525 of the children. At th6 beginning, and for some time, they met in very humble quarters — a part of a tile factory, but the cause met with public approval, and by small sums collected on the sabbath day, and by donations from friends of the enterprise, the school was furnished with necessary books, an organ and other supplies, and it prospered, having an attendance of seventy-five to one hundred during the years following the organization, and better room was rented for a time, from the board of education.
In the year 1887, it was found that the interest» and continued prosperity of the school required more room and better facilities; and after considerable discussion among the members, teachers and officers of the school, it was decided to purchase a lot and erect a building to be occupied by this Union Sunday School.
Thomas Espy, one of the defendants, and who had been a supporter and attendant of the school, owned a lot which was a suitable location, and the purchase price was agreed upon, but the character of title to be conveyed and in whom it should be vested, became a subject of concern, and it was •decided by those managing the school, on advise of Espy and others, to incorporate it, and on application of a sufficient number for that purpose, a charter was obtained for “The South Kenton Union Sunday School Association”, in the year 1887,
Seven trustees of this corporation were elected — some of whom are defendants, and Espy conveyed the lot to the corporation above named. A building was erected, and both lot and building were paid for in money raised — some by subscription — some by entertainments given by the Sunday School. The donations and subscriptions were solicited and made in support of the plan upon which it was first organized —that it was to be non-sectarian; and when completed the building was so dedicated on Christmas 1887, when ministers of the various churches of the town took part in the services of dedication.
*526 The school continued to meet with success and encountered no adversity until the year 1898, A year or more prior to this date, there was organized in South Kenton, the Epworth M. E. Church, with Rev. Stockstill defendant, as pastor, and having no building or place of worship, the church obtained permission of the Sunday School to hold religious services in its building, which it did on sabbath evenings, for about a year or perhaps more. During this period, it appears, that this church won over to its purposes five of the trustees of the Union Sunday School Association, including Thomas Espy, defendant, and two or three of them became trustees of the Epworth M. E, Church, and at its solicitation, these five trustees of the Sunday School Association, concluded to give and convey its lot and building to the church, as well as all contents of the building. They applied to no court for authority to make the transfer, but procured from the legislature of Ohio, the passage of a special act, authorizing the Trustees of the Sunday School Association to execute and deliver to the church, a conveyance of the above named property,
They executed and delivered the conveyance signed by five of the trustees, the other two refusing to sign it. Two of the five were at the same time Trustees of Epworth M. E, Church.
In pursuance of this transfer, the defendants, Trustees of the church and its pastor, begin to take down part of the foundation of the building and were removing the building to another position on the lot, with the intent to erect a new additional church building on the remainder of the lot.
At this stage of the proceedings,' on. July 14, 1898, the plaintiff brought this action to restrain defendants from removing the building and its foundations, and from otherwise interfering with plaintiff’s use and quiet enjoyment of the same; and also asked $800 damages for the wrongs and trespasses already committed.
*527 The lower court allowed a temporary injunction and on final hearing made the injunction perpetual and .awarded $150 damages.
From this decree, defendants have appealed, and we have heard the case on the merits, and find the facts as above stated, In our judgment, the finding and decree of the lower court were right, and fully justified by the .facts. Any other decision as to the property involved, would have been a gross violation of the rights of the plaintiff and a sanction of the rankest injustice.
Saying nothing of the effect of a deed, where two of the trustees appear in the deed in the dual capacity of trustees of the Sunday school association, and also trustees of the church grantee, (leaving but three, a minority of the board of seven trustees who were not so situated, signing the deed —■) we must regard the whole transaction as illegal and void. Form no point of view can it be upheld.
We have observed the history of this Sunday school movement and its purposes and organization, and why and how it became in corporated and acquired this property.
What or who became incorporated under the charter of 1887? Surely not the trustees afterwards elected. It was the “South Kenton Union Sunday School Association” — ■ the men, women and children composing that association. These persons compose the corporation or association, as provided by section 3241, Revised Statutes, which in part reads: “* * * provided, that when the incorporators of a corporation, now or hereafter formed, are or shall be members of a church,religious, secjret or benevolent society, and have signed or shall sign articles for the purpose of enabling such church, religious, secret or benevolent society to become incorporated, any person, who is or shall become a member of such church, religious, secret or benevolent society, in good standing, shall by virtue of such membership be a member of such corporation, and entitled to vote *528 at all meetings of such corporation, for the election of officers or other purpose, anything in the preceding section to the contrary notwithstanding. ”
To comply with the law, certain persons applied for a charter, and executed a certificate stating the name and purposes of the incorporation, and in accordance thrirewith, a charter was obtained and its name appears in its first line:
“The South Kenton Sunday School association”; and the purpose of the organization is stated to be “the worship of God in the Sunday school, and the advancement of the cause of Christianity.”
There is no difficulty in coupling this charter with the labors, self-denial, hopes and wishes of the persons, .who had, during preceding years, furnished an occasion for its issue.
Then, we see, that the property in controversy ' did not belong to the trustees, but to the association, and they had no power or authority to transfer it . except it is derived from the real owner and according to the methods prescribed by law. No such consent or authority was ever given and no legal steps were taken to obtain them. But the defendants claim authority under an act passed by the general assembly of Ohio, March 17th, 1898; (93 Ohio Laws, 462).
“Section 1. Be it enacted by the general assembly of the state of Ohio, that the trustees of the South Kenton Sunday School Association of the city of Kenton, county of Hardin and state of Ohio, be, and they are hereby authorized and empowered to sell for such nominal or other consideration as may be deemed just and proper by them, and convey by deed to Epworth Methodist Church of Kenton, Ohio, the real estate now held by them as such trustees, together with all the rights arid privileges therein,viz: The east one-third part of inlots- 32, 33 and 34 in Thomas Espy’s addition to said city of Kenton, Ohio, together with the buildings thereon, and all the furniture in said building belonging to said association ”
*529 Section 2. This act shall take effect and be in force from and after its passage.”
This is the very generous law and a conveyance made in pursuance thereof, under which the defendants would hold and control this property.
Happily, it is beldom we find such unwarranted and unconscionable legislation. It would wring from the rightful owner, against its will, all it owns, for a consideration not fixed or dictated by it, or for no consideration, as to the trustees might seem best.
To merely say that the law is unconstitutional, is treating it with more consideration than it deserves, because it lacks every element of justice and fair play, and makes a rule that two parties are not necessary to a contract, and that the owner has nothing to do or say while it is being divested of its property.
The Epworth M. B. Church does not possess the right of eminent domain, and if it did, it could not appropriate the property of the plaintiff without first making compensation. What the constitution forbids, the legislature may not do, and it has no more power to give away the property of a citizen, than it has to authorize its appropriation without compensation. In this instance, it was undertaken to cloth men who did not own the property, with the authority to give it away, and under its terms and provisions, the defendants attempted to strip the Sunday school association of every vestige of its property both real and personal,
But all this is of no avail, and it is our duty, not wholly unmixed with pleasure, to declare the special act quoted and the deed made thereunder, void and of no effect to transfer title.
Another ground of defense made in the answer is, that the defendants do not intend to deny the plaintiff of the use of the building, but on the contrary, they propose to construct a better and more commodious building in connection *530 with the one about to be removed, to which members of the plaintiff association will have cordial and free access; and evidence has been introduced to that effect.
S. T. Armstrong, Grow & Durbin, for Plaintiff.
F. C. Daugherty, and Geo. E. Crane, for Defendants.
The proposition is complacent in its nature, but it is no defense to this action. It scarcely arises to the importance of an apology for the defendants to say, they will establish the “open door’’, where all may enter and be made welcome.
Admission there will be admission to a denominational church and Sabbath school, where the tenets and articles of its faith and practice will be taught, and its forms of worship and discipline followed, and where the voice of the plaintiff will never be heard.
Another point made by defendants is, that the plaintiff was not authorized to bring this action, and that no one has been authorized to sue for it.
This claim grows out of the fact, that five trustees refused to have the suit brought, and after it had been commenced, signed a document asking its dismissal.
It may be said in answer to this, that a corporation does not cease at once because some or all of its trustees abandon their trust, It survives for many purposes, and in this case it has some trustees and other loyal friends who would preserve its existence.
Indeed, suing in this instance is the very elixir of life to the plaintiff, or it would lose its property and finally perish.
We find for the plaintiff and perpetually enjoin the defendants form using, removing or otherwise interfering with any of the property described in the petition, and we award to plaintiff $150 damages, defendants to pay all costs.
Decree accordingly.